This case scheduled for oral argument is Martinez-Barroso v. Gonzales. Counsel? Good morning, Your Honor. May I proceed, Your Honor? The reason we're here today, Your Honor, is because we believe strongly that justice requires that the decision of this case be reversed because appellant was denied important statutory and constitutional rights at the time in which the immigration proceedings were conducted. Therefore, making, creating fundamentally unfair hearing in which all the rights of my client were at the end dismissed and he wasn't able to present a coherent case in court. One of the rights is the right to counsel of choice, and that is a statutory right under the INA, the Immigration and Nationality Act, protected by the Fifth Amendment, and requires a waiver of that right before the immigration judge can force some alien to respond and proceed further with the case. And in this matter, when the case was before the immigration judge, Mr. Barroso, Martinez-Barroso, the appellant, was forced to proceed with the case without an attorney after he had informed the court that he had a new attorney that was going to appear with him. The case, it was a case for cancellation or removal. It is a type of case that requires a very stringent, to meet a very stringent standard at the level of what the hardship is. It would be very hard and difficult for anybody who is not trained in the law to actually understand what the standard is and then to be able to present evidence to meet that standard in court. Aside from that, the right to counsel of choice, the appellant was denied the right to adequate legal representation because during all these proceedings, several attorneys appeared on his behalf, but he was controlled by one of those non-attorneys who was the one to whom he was making all the payments and who was giving all the assurances to the appellant that his case was being handled properly. But at the end of things, at the time of the hearing, there was no support for any of the allegations made on the application that was filed with the court. And none of the attorneys ever informed him correctly on how to proceed or how to file those documents, or if they were going to file those documents. That's very apparent on the record. The immigration judge made several comments about this non-attorney who was handling the case. And on that, it could be said that because it is apparent on the face of the record that not even the requirements of law need to be met to prove that there was inadequacy of counsel in this case. There is a problem with the grant of voluntary departure in this case because it expired after the appellant had filed for a motion for reopening or reconsideration with the Board of Immigration Appeals. And the problem with that is that had he applied directly from the denial of the appeal to the Ninth Circuit, then the grant of voluntary departure would have been told immediately, automatically for at least 14 days, and then he would have been able to also apply for the grant, I mean, for the tolling of the grant to the end of the proceedings. The problem with the way that that expires is that it creates two classes of people. One is... Have you read the act? Since the briefs were written, we have a decision called a Zarte. Have you read that opinion? Zarte? Zarte, yeah. I read all the cases stemming from the Schar decision. Well, this case distinguished or overruled Schar because of the change in the statute. It was after both sides had briefed this case, so it's not discussed in the briefs. So you might want to sometime take a look at that, and we'll see what the government has to say about that. Yes, Your Honor. All right. Yeah. Yes, Your Honor. If I... One question I had is... Yes, Your Honor. This Cabrera, who is a notary and represented himself as a lawyer, he appeared on behalf of Barroso. But at any time, did Barroso object before the court as to the fact that he didn't want Cabrera, but he wanted another lawyer? Your Honor, yes. He was under the impression that Cabrera was the attorney and that the real lawyers who appeared on his behalf were acting on behalf of Mr. Cabrera as his associates. At the time of the final hearing, he objected to going forward because he was telling the judge, my lawyer Cabrera is not here. And that really, in his mind, I mean, Cabrera was the lawyer and he wasn't there. And he wanted to hire a new lawyer so he could have a hearing on the merits for his immigration case. Well, it just seemed to me that what the issue here is not so much a lawyer of his own choice, but simply a lawyer. A legitimate member of the bar should represent him. And I didn't get the impression from the briefs that he necessarily wanted to name that lawyer. But my impression was that he was without any legal counsel because Cabrera was not a lawyer. And so he really, in effect, not because he appeared without the lawyer of his own choice, but he necessarily appeared in front of the court or the IJ by the fact that he was represented by someone that was not a member of the bar. And that in itself is, in effect, saying he didn't have a lawyer, period. I mean, not so much he didn't have a lawyer of his own choice, but he just didn't have a lawyer. And so that's what you're seeking here is a replacement of that lawyer you're claiming in denial of what, the Sixth Amendment, I guess. Under the Fifth Amendment, Your Honor, the due process, he didn't have a lawyer that is correct. He didn't have a lawyer at the time of the hearing. He had some lawyers associated with Cabrera all throughout, but not at the very hearing that needed a lawyer, because testimony and evidence was going to be presented at that hearing, not before. And apparently he had also, or he was trying to hire another lawyer, but the lawyer could not show up to that hearing because of lack of enough notice time. So that he is in a situation where he could not present the evidence and deny the right of counsel of choice because he's not allowed to get a continence to come back with a lawyer, with a real lawyer, a fact known to the court. This is not something new to the court. It was very well known that he did not, that he was being used by this notario, and he didn't have a lawyer that day, and he needed to come back with a lawyer to present this case. Okay. You have about one minute left. Do you want to save it for rebuttal? Yes, Your Honor, I do. Thank you. Thank you very much. Good morning. Alison Igo representing the Attorney General. First, as my opponent conceded, there is a question of violation of voluntary departure in this case, which makes Mr. Martinez ineligible. Are you familiar with the Zorte? I am not familiar with the Zorte. I'm going to ask the Court to give me a few days to address that case. However, I would like to point out that in the Board's first order, there were two orders in this case. There was the original order from the immigration judge's decision, and in that order the Board gave Mr. Martinez an additional 30 days. And it's the Board specifically told him about the consequences of his failure to appear and told him that he could get an extension from the district director. This is not a question of him being, you know, not having any remedies available. He just simply didn't pursue the administrative remedy of seeking an extension of his voluntary departure, period. He knew he was going to be. But he filed a motion to reconsider within the time. I understand that. But he was told in the order from which he was moving to. In the order that he was moving to reconsider, it tells him that he has to go to the district director. There is a regulation that provides that. And he just, while he filed the motion, he just simply neglected to pursue his rights. And I would add that, I mean, the Schor case was out there. He just simply couldn't go. The Schor case was wrong. The statutes changed, and Schor is no longer the law. Well, I'd like the opportunity to address that, as I said. However, I'd like to point out that he had an administrative remedy available to him that he did not pursue. He could have gone to the district director and said, I've just filed a motion to reopen on the basis of ineffective assistance of counsel. I would like to have an extension of my voluntary departure period. He didn't do it. So he didn't. He just didn't exhaust his administrative remedies in this case. I'd like to address the issue of ineffective assistance of counsel. This case is an example. Well, there are two separate issues. One is ineffective assistance of counsel, and one is not having counsel, as Judge Ley said, at all, or as the Petitioner puts it, that he wanted a counsel of his choice. That is an issue that was raised in the motion to reconsider, the failure to have counsel of his choice. Right. And I don't find anything in the Board's decision denying the motion that indicates they considered that issue. Well, because if you read his motion to reopen, he styles it and he argues in a sense that his prior lawyers were ineffective. No, there's a separate section on motion to – on denial of motion of your choice. Let's see. The motion to reopen is at page 6 of the record. And the headings are the Respondent was denied his right to counsel of his own choice when the immigration judge insisted on conducting an immigration hearing over the repeated objection of the Respondent. Now, where is that addressed in the Board decision? Well, the Board read this as an ineffective assistance of counsel claim. But what I'd like to point out – Well, that's nice. So they didn't decide the question that he raised? Well, the fact is, is that this man had three lawyers. And the question is whether – Whatever the facts are, did the Board consider and rule on the issue? I would say that the Board interpreted as an ineffective assistance of counsel claim and ruled on it in that – in that way. However, I would say that while you do have the right to an attorney of your choice, that right is not – is not unbounded. It's not unlimited. I don't think it matters what you say about what the right is if the Board didn't rule on it. We can only review what the Board ruled on. You may have a good answer and the Board may have a good answer, but unless it addressed the issue, we couldn't rule in your favor on the basis of a – of a ruling that the Board didn't make. The Petitioner in this case styles that argument as an argument of constitutional dimensions. To the extent that it's a constitutional question, this Court does have the opportunity to rule on it because the Board cannot address constitutional issues. They can address constitutional issues that are questions of procedural due process. In this case, he's styling this as – as a due process claim to the counsel of his choice, which is a question that this Court can answer in the first instance, that this Court does not necessarily. I think, though, the point is that under our case law, if the Board is presented with a motion and doesn't rule on the motion, then that's an error of law and we have to reverse it on that basis. That is true, Your Honor, however. So the question is – well, I mean, you'd have to agree with that. So then the question is, I understand your argument that you think they construed this differently, but if it's fairly presented as a statutory violation and not as a constitutional argument, then I think the Board was obligated to rule on it. Wouldn't you agree? I would agree, but I'm reading – but I think that he's presented this in – in terms of a constitutional violation. I understand your argument. I'm just saying. And, in effect, the Board would not have had the authority to rule on that and the Court would have to rule on it. Yes, I understand that point. If you are going to read it as a statutory violation that the Board should have explicitly ruled on, then – then I don't have an answer for that. Then you would have to send it back to the Board. I'd like to address, however, if you're not going to, I'd like to address the other issue. While the gentleman – while the Petitioner's attorney says that – I mean, I think that there's been a misunderstanding of the record here. The Petitioner has claimed that he had this notario, Mr. Cabrera, who was the one who provided him with – with these three lawyers. That's not what the record – that's not what the record provides. I mean, in fact, his second lawyer comes in and explicitly says on two – in two separate places in the record that Mr. Martinez just came to me yesterday and asked me to represent him. Mr. Martinez is saying, I never met any of these people before I was on the courthouse steps. I don't know any of them. His lawyer came in, Mr. Peek. It's at page – I think it's at page 92 of the record, and says that Mr. Martinez came to me yesterday and asked me to represent him. He asked me to help him. And at which time the immigration judge said, well, then I guess you'll need a continuance, and he grants a continuance on that basis. So you could put – That was Cabrera. No, that was not Cabrera. Cabrera never came to court. Cabrera is not an attorney and never came to court. Okay. And in fact, Cabrera's name does not even come up until the very end, the very last hearing, when – when Mr. Martinez doesn't bring it up, but his wife – his wife testifies, and his wife talks about Mr. Cabrera. Mr. Martinez comes into his last hearing and he says, I talked to an attorney two weeks ago, doesn't want to give his name or doesn't – claims he doesn't remember his name, doesn't want to give his name, and comes in and asks for yet another continuance. This would have been his fourth lawyer. And he is arguing that even if he's arguing the statutory basis, on this – on this record, he had counsel of his choice, Mr. Peek, who he chose not to continue with. And there's no evidence in this record that – that Rahim Ghashgai worked for Mr. Cabrera. When you look at – and this is part of the record. Mr. Cabrera's address is in there. Mr. Ghashgai's address is in there. His notice of appearance is in there. They work from two completely different locations. Mr. Ghashgai doesn't come in and say, I'm from the firm of Cabrera and – I forget the other name, but Rahim comes in and says, I am replacing Mr. Peek and I'm representing the Petitioner in this case. And that's why the board in this case focused on the Lozada issue and the Petitioner's failure to – I mean, it's very, very difficult, and it's the Petitioner's fault in this case, to understand what it is he's arguing about, whether he was arguing an effective assistance of counsel or whether it was his attorney of choice. He had at least one attorney of his own choosing. Now, but the record of the hearing, Mr. Ghash – I'm mispronouncing the name – Ghashgai, that's how you pronounce it, comes in and they say you're – the judge says you're excused. You're – in other words, your appearance is stricken from the record. You're free to go because he has the right to have a new attorney or none at all. That's how it starts off. So then the judge discharges the attorney, sends him out of the room, and goes forward even though Mr. Martinez Barrasso says, I have a lawyer. He's not here. Well, I mean, he tells the judge he's got a new lawyer and he's not there, and the But he asks Mr. Martinez, do you want me to – do you want to dismiss – do you want this lawyer to withdraw? He asks him. Yeah. And Mr. Martinez says yes. This is the – this is his third lawyer that he's dismissing. And my point to the Court is that, I mean, he's arguing that Cabrera sent these people in and he didn't know anything about it, but a number of his assertions are directly contradicted by the record. He claims that he is – he wants Mr. Goschkei to withdraw because he didn't have a lawyer. Well, Mr. Goschkei did withdraw. And his appearance was stricken. No, I understand. I understand the immigration judge's frustration. But when you're presented with a situation where someone has – I've got a new attorney and the Court discharges the old attorney and says, well, okay, but you don't have a – I'm not going to – I'm going to go ahead, and even though your new attorney is not here, that's a statutory violation, isn't it? I don't – I think there's a limit to the statutory limit. Well, what's the best case that says that there is? Because Mr. – because what the Court is suggesting is that Mr. Martinez could come in ad infinitum with attorney after attorney and appear every time at a hearing and say, I don't like him. I want a new attorney. Sure he could. But, you know, the immigration – And this would have been his fourth attorney. Yeah. But the immigration judge didn't say, I'm denying your right of counsel because this is your fourth time. He quibbles it with a while, and so we're just going to go ahead with a hearing. There's no finding by the Board that because – your argument today that because it's his fourth time that he's entitled – that the I.J. is entitled to ignore the statute. But, Your Honor – I understand the practical problem. When you read the record, he didn't even have an attorney at that point. He came in and he couldn't even name the person. He said he had no – We don't know who it was. I am assuming at this point that it was – that it was Mr. Figueroa. But you have no idea, because he comes in and he says, I talked with him two weeks ago. He says he can't appear. I can't remember his name. And the immigration judge says to him, how did you hire an attorney if you don't know his name? This isn't a – this is more complicated than an I.J. just saying to him, like, you know, and my answer to the Court is, is that, yes, you have a statutory right, but there are limits to that statutory right. I mean, you can't keep coming in. If this were a district court at some point, you have the – it's not an ineffective assistance of counsel claim. It's not a criminal case. This is a civil proceeding. He first appeared in court in September of 1998. In January of 2001, he comes in and he says, I want yet another continuance. I want to discharge my third attorney because I have another lawyer. And by the way, I don't know the lawyer's name. I can't even tell you. And it appears as though he had not hired the lawyer yet because the lawyer would not appear for him. The lawyer said, I can't appear for you. There's not enough time. It appeared as though the attorney's representation was going to be contingent on him getting a continuance. But he didn't have a lawyer at that point. So what's your best case that says that an I.J. can deny the statutory right to attorney of choice if you appear three times and discharge three lawyers? Is there a case that says that? I will find one, Your Honor, if there is. And I would ask that the Court can, with the time that I address at Zarte, be allowed to address that. But I think that the argument is fully presented about, you know, the statutory right to counsel is not the opportunity to delay and observe proceedings. No, but there is no finding by the I.J. It's just colloquy. I mean, in this case, there's just colloquy about that. I mean, if we're presented with this colloquy in a district court case, we'd have to send it back down. What we require in district court cases is that there's a finding, there's a colloquy that's required about the advising of the right to counsel. And I realize we're talking about a constitutional dimension in criminal cases, not statutory. But here it's just sort of blown over. And I'm sympathetic with the I.J. The I.J. has a right to be frustrated in this circumstance, but you just can't roll over the statutory right to counsel, I don't think. You're arguing something that's... Your Honor, I... You're arguing if there's a finding. In other words, if he said, I'm going to deny you counsel, I'm going to make you go ahead because of X, Y, and Z, and here are my findings, then we would have findings to review. But here, there's just a colloquy, as I read it. You're giving us... The immigration judge does say to him, who is your attorney and how can you be represented by somebody, you've had a number of continuances, and explains it to him and explains to him why he's going forward. He says, give me my last, give me, I just want a month or two, you know. I can't do that. Well, part of the problem is that the system of notarials, which immigrants seem to think that notarials are what they are in Mexico, which is higher class lawyers, as he explained to the judge, you know, we go to the notarial and he sends in the lawyers. Your Honor, I understand that. Yeah. But there was a lawyer who came into court and said, Mr. Martinez, he didn't say Mr. Cabrera called me. It directly refutes what Mr. Martinez says. Mr. Martinez says, I never met any of these people. They were provided to me by Mr. Cabrera. Now, you can find that the attorney is a liar, but I don't think that that's fair on this record. The attorney comes in, presents himself to the immigration judge and says, I am replacing Mr. Vega in this case. The attorney Mr. Martinez just came to my office yesterday. Are you talking about Mr. Gershkashi or... No, I'm talking about his second attorney, Mr. Peete, because Mr. Mr. Martinez's whole argument is based on the fact that none of these lawyers was his choice. They were all provided to him by Mr. Cabrera, and he relied on Mr. Cabrera. And I understand what you're saying, but my argument is that when you read this record, it's not supported that these attorneys were just his argument, his statement is not supported, because at least one of the attorneys came in and said, Mr. Martinez came to my office and asked me to help him. Mr. Cabrera doesn't figure into this until the very last hearing in which the Petitioner's wife talks about them having sought the aid of a notario in this case. So what I say to the Court is that the whole basis for this Petitioner's claim I think is refuted by the record. He had at least one lawyer of his choice. Well, after all this discussion about Mr. Peete and all of that, the judge says, you take your legal advice from a notarial, don't you? Yes, the notarial, that's what the problem is. There's not too much for the lawyers because the notarials are the ones that work there for them, and you can't communicate with the lawyers. Well, he says, well, that's your problem. You have lawyers and you're talking to the notarials. Why are you going through the notarials instead of talking to your lawyers directly? And he explains, because that's how the case starts. Case starts with a notarial. A notarial sends you to the court, and then here in court is when you meet the lawyer. The judge says, well, that's a bad way to do it because lawyers are licensed by the government. And he goes on about how good lawyers are. Right, because the Petitioner's wife, when she testified, testified about the notarial. However But the judge didn't say that's not what happened. He didn't say you didn't get your lawyers from the notarial. Well, Your Honor, I would say to the Court that the court said to me this is just a colloquy and an information. I mean, it's not evidence. No, but to your How do we I'm sorry. How do we credit your argument? You want us to make a finding that's not in the record based on your argument saying that this testimony is untrue? And the immigration judge assumed it was true. Assumed what was true? Assumed that they talked to the notarial. I'm not suggesting he didn't talk to a notarial. That's I'm not suggesting he didn't. And I'm not suggesting that his that his case didn't start with a notarial. His basis for not having an attorney of his choice is that the notarial provided the lawyers. And what I'm saying to you is that at least one lawyer comes in and refutes his claim, because at least one lawyer who appears to, in this record, Mr. The colloquy of Mr. Vega is not in there, so it's hard to tell. But neither one of these attorneys comes in and professes any connection to Mr. Cabrera. There's no connection between their addresses. There's nothing in this record that suggests they worked on an address. And further, Mr. P comes in and says, contrary to what this Petitioner claims, that he never met him before meeting him on the courthouse desk, that Mr. Martinez himself came into his office and asked for his help. So my argument to this Court is not that a notarial was not involved, and I think probably that Mr. Martinez was also talking with a notarial as well as talking to an attorney. And I think what the immigration judge was saying to him was, you have attorneys, you shouldn't be listening to a notarial. But I don't think that he's finding that the notarial was the one who provided the attorneys. And that's the basis for this Petitioner's claim, that he didn't have an attorney of his choice. And what I'm saying to the Court is there's record evidence that the lawyer himself who says, this man hired me, and it's further complicated by the fact that although this Petitioner filed an ineffective assistance of counsel claim, he meets none of the  So we don't have any evidence in the record. I mean, you know, it would be a lot easier if this Petitioner had done anything to help himself. He doesn't provide any of the records, the supposed records of payment he claims he paid only, Cabrera in this case. There's no records in that. There's no letter of agreement. There's no letter to either Cabrera, to Vega, to Peek, or to Ghoshgai about the terms of their agreement. I mean, I'm assuming that these lawyers did not appear in court without some sort of a payment and without some sort of a written agreement. I mean, lawyers generally want to get paid. And yet, the Petitioner comes in and moves on the basis of him not having a lawyer of his choice because he can't name a fourth lawyer, and the lawyer, he doesn't even provide records that he paid that lawyer before he came to court for his last hearing. So it's a question that, in moving to reopen, this Petitioner had the power to do that without the burden. I mean, the Board only had in front of it what it had in front of it, and it couldn't make a finding because the Petitioner didn't provide the Board with the opportunity to do it, with the facts to make the finding. I mean, there was only so much the Board could do in this case. I would ask in – I believe my time has expired. I would just ask the Court to take the opportunity to ask the Court for a few days I return to my office on Monday, a day or two, to address with Arte. We'll decide what further briefing we need, and we'll send out an order. So I should wait for the order. Wait for the order. But I must say I'm somewhat surprised that the government didn't. I mean, Arte's been out quite a few months, if I recall. You're correct, Your Honor. And it's just – it's sometimes just a question of the volume and not having briefed the case and being familiar with the issues that are raised.  Yes, it's filed in January. And I apologize, and I should have been ready to address that case, and I apologize, but it's new. It's for 94 F. 3rd, 1278. I'm familiar with the name of the case, but I just can't address it. Okay. Thank you. Your Honor, just very briefly, on the factual allegations in the record, Your Honor, as far as whether or not these attorneys had any real connection with Mr. Barroso or not, it is very clear on the record, Your Honor, that these lawyers did not — they appeared one time with this petitioner, and then the next time they appeared, they did not appear. The next time they simply did not appear, they did not move to withdraw from the record, and somebody else just appears, and not on behalf of the lawyer, but now saying on behalf of the client, which is the petitioner. The client is asked, do you know this man? And he says, I don't know. And then it really — I think it is more — it's a lot clearer than it sounded that there is a conflict here of these lawyers and the non-attorney. Obviously, that is the kind of situation that gives rise — that happens every time there is that kind of association. And then the results are very similar, though. At the end, the client is left alone at the very final stages of the proceedings. No filings are made of the forms and indexes and the proof that needs to be presented to the court to prove their claims. I simply have to insist on the fact that the client suffered from inadequacy of counsel, although the counsel did not appear at the hearing. But it permeated the hearing because it is the fact that they did not do what they had to do that led to the final non-performance of the client at the time of the merits hearing. One question. At the end of the day, if you prevailed on everything, how do you get around — and you got a new hearing — how do you get around the continuous presence requirement? I mean, there just doesn't seem to be, in this record, a way to get around that, which is the prerequisite for statutory eligibility. I understand, Your Honor, that he did meet the 10-year requisite. He had some — he went out to Mexico once or twice, but he came back within the time that did not break the continuance of the state in the United States. You mean if there were a new hearing, he would be able to show that he had been here 10 years? I believe so, Your Honor. But one of those was broken by deportation, was it? Your Honor, that is right on the record, and the immigration judge even talked about it, but it says clearly it's not in evidence. It's something that is very much in the air. It's very much in the air. It's something we don't know. It's a factual issue that has to be determined. Okay. Thank you, Your Honor. Case just argued will be submitted. Thank you, counsel. The next case for argument is Kikovic v. Gonzalez.
judges: Lay , Reinhardt, Thomas